IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CHARLES WHATLEY, | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-13-3735 |
| | § | |
| MONTGOMERY COUNTY, TEXAS, | § | |
| *et al.*, | § | |
|     Defendants. | § | |

## **MEMORANDUM AND ORDER**

This case is before the Court on the Motion to Dismiss [Doc. # 29] filed by Defendants Montgomery County, Texas ("County"), Larry Melton, and A. Cross, and the Motion to Dismiss [Doc. # 31] filed by Defendant Jerry Waxler, *pro se*. Plaintiff Charles Whatley filed a consolidated Response [Doc. # 32] to the two Motions to Dismiss. No replies were filed. Having reviewed the full record and governing legal authorities, the Court **grants** the Motion to Dismiss as to the County and **denies** the Motions to Dismiss in all other respects.

### **I.    BACKGROUND**

Plaintiff provided contract security for Mike Garcia Merchant Security ("Garcia Security"), the security company for the United States Federal Aviation Administration ("FAA") Air Route Traffic Control Center at Bush Intercontinental

Airport in Houston, Texas.  Defendant Waxler was employed as a security officer for Garcia Security under Plaintiff's supervision.  Plaintiff alleges that Waxler was previously employed as a deputy with the Montgomery County Sheriff's Office, but was terminated in October 2008 for untruthfulness and making false accusations against the Sheriff and the Sheriff's Office.

Plaintiff alleges that Waxler became disgruntled when his request to become a fulltime security officer with Garcia Security was denied, and when Plaintiff confirmed that Waxler "had to take orders from" an African-American.[1]  *See* Second Amended Complaint [Doc. # 26], ¶ 13.  Plaintiff alleges that in February 2011, in an attempt to have Plaintiff fired, Waxler claimed to have received a "text of a naked person" from Plaintiff in December 2010.  Plaintiff denied Waxler's accusation.  Plaintiff alleges that Garcia Security personnel thoroughly investigated Waxler's accusation and found no evidence to support the claim.

Plaintiff alleges that in November 2011, Waxler called the Montgomery County Sheriff's Office to report allegedly harassing text messages from Plaintiff.  Plaintiff alleges that, although two other deputies were originally dispatched to the scene, Deputy Cross, a Defendant herein, handled the report.  Plaintiff alleges that Waxler and Cross "had arranged for Ex-deputy Waxler to phone in when Deputy Cross was

---

[1] Plaintiff alleges that Waxler "was the subject of several racial harassment claims" at Garcia Security.  *See* Second Amended Complaint, ¶ 13.

available to take the call for service" and that Deputy Cross, "who personally knew ex-deputy Waxler" went to Waxler's home. *See id.*, ¶¶ 15-16. Plaintiff alleges that Deputy Cross knew that Waxler's allegations were false, but included them in his offense report. *See id.*, ¶ 19. Plaintiff alleges that Deputy Cross provided the offense report to Defendant Melton, an investigator with the Montgomery County District Attorney's Office, who knowingly used the false allegations to obtain an arrest warrant for Plaintiff. *See id.*, ¶ 35.

Plaintiff alleges that he was falsely charged with the crime of harassment and was arrested even though Waxler, Cross, and Melton knew there was no probable cause and, indeed, knew the accusations were false. Plaintiff was arrested in December 2011 at his place of employment. Plaintiff was taken to the Montgomery County Sheriff's Office annex in New Caney, where he alleges that he saw "at least one person at the jail he helped arrest . . . ." *Id.*, ¶ 40. Plaintiff alleges that immediately after he was arrested, Waxler "repetitively called" Garcia Security and demanded that Plaintiff be fired. Plaintiff alleges that, when Garcia Security refused to fire Plaintiff, Waxler called the FAA to inform it of Plaintiff's arrest. Plaintiff alleges that the FAA cancelled Garcia Security's contract at Bush Intercontinental Airport, causing Plaintiff to lose his job.

On February 13, 2012, the charge against Plaintiff was dismissed for "insufficient evidence." Plaintiff alleges that he has been unable to find work since his arrest.

Plaintiff filed this lawsuit on December 22, 2013, alleging violations of the Fourth, Fifth and Fourteenth Amendments. Plaintiff also asserts pendent state law claims for "conspiracy, abuse of process, malicious prosecution, assault and/or battery and false imprisonment." *Id.*, ¶ 65. Plaintiff seeks compensatory and punitive damages, and to recover his attorney's fees.

Defendants filed Motions to Dismiss the Second Amended Complaint. The Motions have been briefed and are now ripe for decision.

## II.   STANDARD FOR MOTION TO DISMISS

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure is viewed with disfavor and is rarely granted. *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (citing *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)). The complaint must be liberally construed in favor of the plaintiff, and all facts pleaded in the complaint must be taken as true. *Harrington*, 563 F.3d at 147. The complaint must, however, contain sufficient factual allegations, as opposed to legal conclusions, to state a claim for relief that is "plausible on its face." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Patrick v. Wal-Mart, Inc.*, 681 F.3d

614, 617 (5th Cir. 2012). When there are well-pleaded factual allegations, a court should presume they are true, even if doubtful, and then determine whether they plausibly give rise to an entitlement to relief. *Iqbal*, 556 U.S. at 679. Additionally, regardless of how well-pleaded the factual allegations may be, they must demonstrate that the plaintiff is entitled to relief under a valid legal theory. *See Neitzke v. Williams,* 490 U.S. 319, 327 (1989); *McCormick v. Stalder,* 105 F.3d 1059, 1061 (5th Cir. 1997).

### III. COUNTY'S MOTION

To prove a § 1983 claim against a county, the plaintiff must show that "(1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *See Jackson v. Ford*, 544 F. App'x 268, 272 (5th Cir. Feb. 27, 2013) (quoting *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 847 (5th Cir. 2009)). Montgomery County argues that Plaintiff has failed to allege facts indicating the existence of an official policy.

Generally, a plaintiff can properly allege "official policy" in three ways. First, "when the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy." *Burge v. Parish of St. Tammany*, 187 F.3d 452, 471 (5th Cir. 1999). In Texas, "[t]he sheriff is without question the county's final policymaker in the area of

law enforcement." *Jackson*, 544 F. App'x at 272 (quoting *Colle v. Brazos County, Tex.*, 981 F.2d 237, 244 (5th Cir. 1993); and citing TEX. LOC. GOV'T CODE § 351.041). The "official policy" need not be formally adopted by the policymaking body, but can be established through "a persistent, widespread practice which, although not officially promulgated, is so common and well settled as to constitute a custom that fairly represents municipal policy." *Esteves v. Brock*, 106 F.3d 674, 677 (5th Cir. 1997) (internal quotations and citation omitted). Plaintiff alleges that Montgomery County "has a custom, practice policy and procedure of: Faulty investigations; Allowing DA Investigators to swear on Affidavits for Orders of Arrest when they have not investigated the matter; Allowing the deputy investigating a crime not to swear to anything yet a warrant of capias issues; Failure to discipline deputies for misconduct." *See* Second Amended Complaint, ¶ 62. Plaintiff has failed to allege facts supporting this list of alleged policies. Plaintiff's allegations involve only his experience, and his own isolated incident does not demonstrate an official policy. *See Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 851 (5th Cir. 2009).

Second, a plaintiff can properly allege "official policy" for purposes of municipal liability under § 1983 "[w]here no 'official policy' was announced or promulgated but the action of the policymaker itself violated a constitutional right." *Burge*, 187 F.3d at 471 (citations omitted). Plaintiff argues that this "is exactly what

happened here." *See* Response, p. 11. There are no allegations, however, that the Montgomery County Sheriff himself was involved in the alleged conspiracy among Waxler, Melton and Cross.

Third, a plaintiff can establish "official policy" by alleging facts which indicate that "[e]ven when the policymaker fails to act affirmatively at all, if the need to take some action to control the agents of the local governmental entity 'is so obvious, and the inadequacy [of existing practice] so likely to result in the violation of constitutional rights, that the policymake[r] . . . can reasonably be said to have been deliberately indifferent to the need.'" *Burge*, 187 F.3d at 471. Plaintiff has not asserted factually that there was a pattern of activity indicating an obvious need to "take some action to control the agents" of the Montgomery County Sheriff's Office to prevent deputies and investigators from knowingly obtaining the arrest and criminal conviction of citizens based on false accusations. As noted above, Plaintiff's allegations involve only his own single experience with the Montgomery County Sheriff's Office. Moreover, Plaintiff alleges no facts prior to his arrest that would have placed the Sheriff on notice that the existing practices in the office were so clearly inadequate that they were likely to result in constitutional violations.

Plaintiff has failed to allege facts that demonstrate an official policy in Montgomery County that was the moving force behind the alleged violation of his

Constitutional rights. As a result, Plaintiff has failed to state a § 1983 claim against the County, and Montgomery County's Motion to Dismiss is granted.

## IV. INDIVIDUAL DEFENDANTS' MOTIONS

### A. Waxler's Potential Liability Under § 1983

To state a claim under § 1983, a plaintiff must (1) allege a violation of rights secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law. *Cornish v. Correctional Servs. Corp.*, 402 F.3d 545, 549 (5th Cir. 2005) (citing *West v. Atkins*, 487 U.S. 42, 48 (1988)). Waxler asserts that he cannot be held liable under § 1983 because he is a private party, not a person acting under color of state law. Plaintiff alleges that Waxler conspired with Melton and Cross to obtain an arrest warrant knowing that the information on which it was based was false. Such allegations are sufficient to state a § 1983 claim against a private party. *See Keko v. Hingle*, 318 F.3d 639, 642 (5th Cir. 2003).

Waxler asserts also that Plaintiff has not presented sufficient facts to support his § 1983 claim. Plaintiff adequately alleges that Waxler, together with Melton and Cross, knowingly used false allegations to obtain Plaintiff's arrest and criminal prosecution without probable cause. These allegations adequately state a claim that Waxler, Melton and Cross violated Plaintiff's Fourth Amendment rights.

### B.     Melton and Cross's Assertion of Qualified Immunity

Defendants Melton and Cross argue that they are entitled to qualified immunity from liability to Plaintiff under § 1983.  Qualified immunity protects government officials from liability where their conduct is objectively reasonable in light of clearly established law.  *See Crostley v. Lamar County, Tex.*, 717 F.3d 410, 422 (5th Cir. 2013) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Kinney v. Weaver*, 367 F.3d 337, 346 (5th Cir. 2004) (*en banc*)).  Where, as here, a defendant invokes a qualified immunity defense, the plaintiff bears the burden to demonstrate that qualified immunity does not apply.  *Id.* (citing *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002)).  To demonstrate that the defendants are not entitled to qualified immunity, the plaintiff must show "that the defendants committed a constitutional violation under current law [and] that the defendants' actions were objectively unreasonable in light of the law that was clearly established at the time of the actions complained of."  *Id.* (citations omitted).

Plaintiff alleges that the individual defendants violated his Fourth Amendment right to be free from unreasonable searches and seizures by knowingly using false allegations to obtain Plaintiff's arrest and criminal prosecution.  "In the context of Fourth Amendment false arrest claims and the issue of probable cause, '[e]ven law enforcement officials who reasonably, but mistakenly, conclude that probable cause

is present are entitled to immunity.'" *Id.* at 423 (quoting *Gibson v. Rich*, 44 F.3d 274, 277 (5th Cir. 1995)).

In this case, however, Plaintiff is not alleging simply that there was no probable cause for his arrest. Instead, Plaintiff alleges that Melton and Cross knew that the accusation against him was false, and that they knowingly used the false accusations to obtain his arrest. "Qualified immunity will not attach if a 'reasonably well-trained officer in [the officer's] position would have known that his affidavit failed to establish probable cause.'" *Winfrey v. San Jacinto County*, 481 F. App'x 969, 978 (5th Cir. July 27, 2012) (quoting *Malley v. Briggs*, 475 U.S. 335, 345 (1986)). "When the Fourth Amendment demands a factual showing sufficient to comprise 'probable cause,' the obvious assumption is that there will be a *truthful* showing." *Franks v. Delaware*, 438 U.S. 154, 164-65 (1978) (citation omitted). "This does not mean 'truthful' in the sense that every fact recited in the warrant affidavit is necessarily correct" but means "'truthful' in the sense that the information put forth is believed or appropriately accepted by the affiant as true." *Id.* at 164.

At this early stage, Plaintiff has adequately asserted that Melton and Cross violated his rights under the Fourth Amendment and that their actions, as alleged by Plaintiff, were objectively unreasonable in light of clearly-established law. As discussed above, Defendants are entitled to qualified immunity if they reasonably, but

mistakenly, concluded that probable cause existed. As also discussed above, however, Defendants are not entitled to qualified immunity if, as Plaintiff alleges, they knowingly used false information to obtain Plaintiff's arrest and criminal prosecution. As this stage, the disputed allegations of material facts preclude a qualified immunity determination. *See Carlow v. Rivera*, __ F. App'x __, 2014 WL 1344507, *1 (5th Cir. Apr. 7, 2014) (citing *Manis v. Lawson*, 585 F.3d 839, 842 (5th Cir. 2009)). As a result, Melton and Cross's Motion to Dismiss is denied without prejudice.

## V.     CONCLUSION AND ORDER

Plaintiff has failed to allege a factual basis for imposing liability on the County. Plaintiffs' allegations adequately state a claim for relief as to the individual Defendants, including allegations that demonstrate that Waxler has potential liability under § 1983. Accordingly, it is hereby

**ORDERED** that the Motion to Dismiss [Doc. # 29] is **GRANTED** as to Montgomery County only and is **DENIED WITHOUT PREJUDICE** as to Defendants Melton and Cross. It is further

**ORDERED** that Defendant Waxler's Motion to Dismiss [Doc. # 31] is **DENIED**.

The case remains scheduled for a pretrial conference at **2:00 p.m. on June 24, 2014**. At that time, the Court will entertain requests for limited discovery and early motions for summary judgment on the qualified immunity issue.

SIGNED at Houston, Texas, this **5th** day of **June, 2014**.

_____
Nancy F. Atlas
United States District Judge